SAMUEL *alias* SAM BURNETT v. THE STATE.

1. HOMICIDE. *Indictment.* Where a father was indicted for having killed his child by blows, evidence that he had exposed and neglected the child was held to be admissible, to show malice.

2. SAME. The indictment charged that death was produced by bruises and blows. The evidence showed that death resulted from pleuropneumonia superinduced by the wound and blows. *Held,* that the offense was established.

FROM SMITH.

Appeal in error from the Circuit Court of Smith county. N. W. McCONNELL, J.

GARRETT & SON for Burnett.

ATTORNEY GENERAL LEA for the State.

COOKE, J., delivered the opinion of the Court.

The defendant was indicted for the murder of his own child, a little girl of about seven or eight years. The indictment charged that the defendant did with sticks, switches, leather straps, clubs, rocks, bludgeons and cudgels, unlawfully, etc., strike, beat, bruise, and wound the deceased upon the head, breast, back, arms and body, giving to her divers wounds, etc., and from which it was averred that she died. The prisoner was convicted of involuntary manslaughter, and has appealed to this court.

On the trial the State proved that the defendant had been in the habit of cruelly and inhumanly whip-

ping this child; that he was seen whipping it with a leather strap on Saturday before its death on the next Wednesday; that its feet were badly frost-bitten. Divers witnesses testified as to facts and circumstances connected with the cruel treatment of the child, and the character of wounds and bruises on its person at the time and after its death; among others, the surgeon and physician who conducted a *post mortem* examination of the body, which was exhumed for that purpose some eight days after death. He describes it as follows: "The child had been buried some seven or eight days, and the skin had in some places undergone considerable decomposition, and sloughed. The body had considerable cuts upon it in a good many places, showing evidently the child had been unmercifully whipped, and subjected to very great violence and ill-treatment, back striped, slough on hips and back of femur, slough on shoulder, wound on right elbow ranging upwards, probe inserted here one inch, the wound seemed to have been caused by a switch with a projection of some kind on it; wound over middle finger of left hand. There was also a wound over the eye, all of which wounds, with others over the body and back of legs, had not healed, and showed to be of recent date. There were various other sores or wounds which had healed, showing this ill-treatment or whipping to have been kept up for some time. There was also evidence of frost-bite on both feet; the flesh had sloughed from over the bones of the heel, leaving the same bare. On examination they found the stomach, bowels, heart and

liver to be in a normal or healthy condition. The lungs and pleura showed evidence of disease, and of which he gives a minute description, showing that both pleurisy and pneumonia, or pleuro-pneumonia, had existed in the second stage at the death of the child. This disease, or either of these diseases separately, is brought about from exposure, cold, neglect, or ill-treatment; from traumatic causes, as from a direct wound of. the lung or organ involved. Pneumonia can also occur from violence to the body without, as he thinks, a direct injury to the lung itself. The child's body was very much emaciated, and the internal organs examined were empty, and judging from the wounds, as located over the body and legs, the frost-bites, and the general emaciation as existing, the witness was of the opinion that the immediate cause of the death of the child was pleuro-pneumonia, as there was no wound or injury of sufficient importance or great enough to have caused immediate death; yet he is of opinion, in all reasonable probability, this pneumonia and pleurisy were caused or brought on from the neglect and violent exposure which this child had been subjected to. He further states that pneumonia often occurs where the patient is surrounded with the most favorable circumstances, and this child may have probably had these diseases under the most favorable surroundings. The sloughing on back and legs and shoulders was mostly caused from decomposition. Did not examine the brain, but from an external examination saw no evidences of injury to either the skull or brain. The child died

last March.   Last winter was the coldest winter we have had for years.   Pneumonia is more likely to occur in cold winters than mild winters, and more cases occur in March than any other month.   It is more prevalent and fatal among colored children in the South than among adults or white people.   Any exertion or excitement of the patient is injurious.   A severe whipping of a child suffering with this disease would likely hasten its death.   It was proved by the witness who saw the whipping of the child by the defendant on the Saturday before its death, that he on that day passed his hand over the child's breast and its breathing seemed to be rough.   It seemed to get its breath hard.

There was other evidence in the cause tending to show neglect and exposure of the child by defendant as well as cruel abuse, to all of which the defendant objected, because the same was not alleged in the indictment, but the objection was overruled by the court, and the testimony permitted to go to the jury, as the record states, as competent for the purpose of showing malice on part of the defendant towards the deceased child.   We think the testimony was admissible for that purpose.   And in his charge his Honor instructed the jury that they could not look to it for any other as against the defendant, but they might look to it in exoneration of the defendant if they were satisfied that was the sole cause which produced the disease of which the child died.

It was also objected that all the evidence was inadmissible under the frame of the indictment, as the

·child is shown to have died of pleuro-pneumonia, and the indictment avers that it died of the wounds and injuries inflicted upon it by the prisoner. And it is insisted that although the disease of which it died ·was caused or superinduced by these wounds, in con- nection with · other causes, yet this should have been averred in the indictment in order to render the tes- timony admissible. The objection was properly over- ·ruled, because "in law, if the person dies of the action of the wound, and by the medical or surgical ·action jointly, the · wound must clearly be regarded sufficiently a cause of death; and the wound need not even be a concurrent cause, much less need it be the next proximate one, for if it is the cause of the cause no more is required": 2 Bish. Cr. L., sec. ·680, citing Lord Hale, P. C., 428; 8 Cash, 181; 1 Crawf. & Dix. C. C., 45.

The court, among other things not excepted to, charged the jury as follows: "If you find that the child died from pleuro-pneumonia, you will consider what gave it this disease. The pleuro-pneumonia will be the immediate cause of its death. This being a natural cause of death, the prisoner cannot be held responsible for it, unless his unlawful acts, as charged in the indictment, that is the whipping or beating, were a material contributing cause of this disease. In ·other words, if he unlawfully assaulted and beat the child, and this alone, or operating efficiently with other causes, brought on the attack of pleuro-pneumonia, ·then he will be criminally liable for its death. For in this event his unlawful acts will be the cause, or

at least one of the causes, of the pleuro-pneumonia which caused its death." This, it is insisted, was erroneous. "The general rule," says Mr. Bishop, "both of law and of reason is, that whenever a man contributes to a particular result brought about either by the sole volition of another, or by such volition added to his own, he is to be held responsible for the result the same as if his own unaided hand had produced it. * * Now these propositions conduct us to the doctrine that whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible, if death follows, he will be holden for murder or manslaughter, though the person beaten would have died from any other causes, or would not have died from this one had not others operated with it, provided the blow really contributed mediately or immediately to the death, as it actually took place in a degree sufficient for the law's notice": 2 Bish. Cr. L., 679. Wharton states the same principle as follows: "If the wound causes a fever which produces death, the death, on the principle already stated, is imputable to the wound. So if a man, to adopt Lord Hale's statement, be sick of some disease, which by the course of nature might possibly end his life in half a year, and another gives him a wound or hurt which hastens his death by irritating and provoking the disease to operate more violently or speedily, this is murder or other homicide, according to the circumstances, in the party by whom such wound or hurt was given. For the person wounded does not die simply *ex visitatione Dei*, but

his death is hastened by the hurt which he received, and it shall not be permitted to the offender to apportion his own wrong ": Whar. on Hom., sec. 382.

In *Rex* v. *Squire and Wife,* where the husband and wife were jointly indicted for the murder of an apprentice by unlawfully beating and starving it, the death of the child was proved to have been caused by starvation, and for which the wife was not responsible, it was held to be a proper subject of inquiry as to her whether or not the beating, of which the wife was guilty, had contributed to cause the death: 1 Russ. on Crimes, 490, note 6. These authorities, we think, in principle, fully sustain the charge of the court above cited, and which was correct.

The defendant, before the jury was charged, presented a number of specific charges which he requested the court to give, a part of which were embraced in his general charge and a portion omitted. After the charge was given, defendant again presented them, and again requested the court to charge them, or specify his reasons upon them for his refusal. This the court declined because he had included portions of them in his charge as delivered, and they were not prepared or presented as required by the act of the Legislature. We think his Honor was correct in this, and besides, none of them, except such as were embodied in the charge as given, were correct legal propositions. As appears in the transcript, the court in defining the different grades of homicide in one part of his charge, gave a correct definition of *involuntary* manslaughter as *voluntary* manslaughter. This is in-

sisted upon as an error. We are satisfied this was
a mere mistake of the clerk in making out the tran-
script, as he had already in the paragraph just pre-
ceding defined voluntary manslaughter, and in another
part of the charge gave the same description as being
that of involuntary manslaughter. Whilst from all
the testimony, as we see it, there might, we think,
perhaps, be some doubt as to whether the violence
inflicted upon the child, as charged in the indictment,
was an efficient cause in producing the disease of
which it died, yet the jury upon a proper and full
charge have found that it did, and we cannot under-
take to say there is not sufficient proof to sustain
the verdict. That the child came to its death by
the unnaturally cruel and brutal treatment of this
defendant, there can be no possible doubt from this
record, and while the acts of neglect and expo-
sure not alleged in the indictment contributed no doubt
much toward bringing on the disease of which he
died, yet as the jury were expressly instructed that
they could only look to these acts so far as they
tended to show malice on part of defendant towards
the deceased, and as by their verdict they failed to
find that malice existed, it is clear they were not
influenced by this testimony: and as it was shown
by the proof of the physician, that whipping a person
laboring under the disease of which this child died
would tend to aggravate the disease and hasten death;
and as it was also shown that the defendant was seen
whipping the child with a leather strap only four
days before its death, and when, from its rough and

restricted breathing it was then evidently laboring under this disease, and from the lacerated condition of the body, and the severe and almost daily whippings he is proved to have given it when at home, when taken together with the opinion of the physician who made the *post mortem* examination of it, that this violence did contribute to produce the disease of which it died, we are not prepared to say the jury were not warranted in finding the verdict, and upon the whole case are content to let it stand.

There being no error in the record, the judgment must be affirmed.