**Kenneth Wayne GOEDEL, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

April 4, 1978.

Certiorari Denied by Supreme Court
June 26, 1978.

Stanley H. Sidicane, Nashville, for appellant.

Brooks McLemore, Jr., State's Atty. Gen., William O. Kelly, Asst. State's Atty. Gen., Harold B. McDonough, Jr., Claudia Bonnyman, Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

BYERS, Judge.

The Appellant, along with Wanda Faye Harrison, who does not appeal, was convicted of conspiracy to commit murder and sentenced to serve not less than four (4) years nor more than ten (10) years.

The Appellant says the trial court should not have allowed a portion of Wanda Faye Harrison's statement to be introduced which showed she was having an affair with a seventeen (17) year old boy, that the conduct and remarks of the trial judge during the trial of the case prejudiced the Appellant, that the jury was polled by the trial judge in a manner which interferred with an independent decision by the jury in reaching their verdict, and that the Court Reporter failed to record important conferences held by the attorneys and the trial judge at the bench.

The assignments of error are overruled and the judgment is affirmed.

During the month of January, 1975, the Appellant, who was working in Memphis, revealed to a female co-worker, Laverne Reynolds, a plan in which he was to kill William Harrison at the request of Harrison's wife, Wanda Faye Harrison. This co-worker refused to aid the Appellant who wanted her to support a claim that he was in Memphis on the date when the killing of Harrison was to occur.

Mrs. Reynolds informed a member of the Memphis Police Department of this conversation in an effort to prevent the murder from taking place. The Memphis authorities placed an electronic transmitter in her purse and monitored subsequent conversations between her and the Appellant. In addition, the police recorded, with Mrs. Reynolds' consent, a telephone conversation between her and the Appellant about this matter. By this method, the Memphis authorities learned that Wanda Faye Harrison was to furnish the Appellant with a gun to be used in killing her husband. Also, on the night in which the killing was to be carried out, she was to leave a side door to her home unlocked in order for the Appellant to enter and kill her husband as he slept.

The Appellant was to make a silencer for the gun and on the night selected for the execution, he was to travel by bus to Nashville and kill the husband. The Appellant's wife was to meet him at the bus station in Nashville and drive him to the Harrison home. After the killing of William Harrison, she was to drive the Appellant back to Memphis.

The Memphis authorities notified the Nashville police of what they had learned and the police of these cities coordinated their activities to arrest the responsible persons and to prevent the murder of William Harrison.

On January 31, 1975, the Appellant boarded a Greyhound Bus in Memphis, which was routed to Nashville. The Memphis police notified the Nashville police that the Appellant was en route to Nashville. The Nashville police observed this bus arrive at the Nashville depot and saw the Appellant alight therefrom. He entered a Honda automobile which was driven by his wife. They proceeded in the direction of the Harrison home. The police kept this vehicle under surveillance until it arrived in the vicinity of the Harrison home,[1] at which time they stopped the vehicle and arrested the Appellant. When arrested, the Appellant had a .22 calibre pistol, with ammunition, in his possession. He also had a crude silencer which he had fashioned to be used on this pistol. He was wearing, among other things, white, cotton gloves with a rubber glove being worn under the cotton glove on his right hand, and a pair of boots which were two sizes smaller than his feet. In the vehicle were three bags of sand, a lead weight and a five gallon can filled with gasoline. Investigation by the police revealed that the Appellant intended to carry the sand or weight so that his footprints would make a deeper impression in the soil, which had apparently been made wet by rain, than would his normal body weight. The gasoline was to avoid a stop for fuel on the return to Memphis. The evidence showed that Wanda Faye Harrison had delivered the gun, ammunition and gloves to the Appellant's home in Nashville.

While the Appellant was being followed, two police officers were dispatched to the Harrison home to prevent the murder of William Harrison in the event the Appellant eluded the officers who trailed him. When these officers arrived, they found a door unlocked and partially opened as the planning of the crime had envisioned. The officers entered the home and arrested Wanda Faye Harrison.

Wanda Faye Harrison and the Appellant gave statements to the police in which they confirmed essentially what the police investigation had revealed. Wanda Faye Harrison maintained in her statement to the police and in her testimony at trial that the entire episode was only a joke and was not to be carried out. She related, however, that she realized the Appellant was serious in his intentions and that she was going to intercept him when he entered her home through the unlocked door to prevent the murder of her husband. She did not, however, lock the door or warn her husband of this impending danger. Her explanation for not doing either of these things was not convincing. The Appellant offered no evidence at trial.

The Appellant says he may object to evidence introduced against Wanda Faye Harrison because in a case charging a conspiracy to commit a crime the acts of each are considered imputable to all of the conspirators. *Delaney v. State*, 164 Tenn. 432, 51 S.W.2d 485 (1932).

 We are of the opinion that the evidence concerning Wanda Faye Harrison's involvement with a young boy was admissible. She admitted she had engaged in sexual intercourse with him. This evidence was relevant to show a possible motive she might have to seek the death of her husband. Evidence which tends to show a motive to commit a crime is admissible even though it might be prejudicial. *Ivey v.*

---

1. There is a dispute in the evidence concerning the distance involved. The police testimony showed the distance to be from one-fourth to one-half mile from the Harrison home. The Appellant's evidence showed it to be from one (1) to four (4) miles away.

*State,* 210 Tenn. 422, 360 S.W.2d 1 (1962). The Appellant further claims that it was error to show this evidence prior to Wanda Faye Harrison testifying because it constituted an attack upon her character in the absence of her character being put in issue by her. The fallacy in this assertion is that the evidence was relevant and substantive evidence introduced to show the complicity of Wanda Faye Harrison in this crime rather than collateral evidence to show her bad character.

■ The Appellant says the trial judge's conduct in ruling on objections prohibited him from obtaining a fair and impartial trial. There were some exchanges between the trial judge and counsel for the Appellant which appear to have been rather sharp. However, we are of the opinion that these did not affect the verdict of the jury or interfere with the Appellant's right to a fair trial. The most significant of these instances occurred when the cross-examination of a State witness became confused. The question being asked could have covered conversations which the witness had on different occasions with police officers. During discussion of this among the Assistant District Attorney General, counsel for the Appellant and the court, the trial judge remarked "We are floundering around," and directed Appellant's counsel to be more specific. The trial judge then said "That's just fishing." Following another statement by the trial judge about the ability to recall conversations, the Appellant's attorney asked if the court was commenting on the evidence. The trial judge replied no and directed counsel to be more specific. Simultaneously with this, Appellant's counsel stated "Well, it sounds awfully like it." Obviously counsel was referring to his own suggestion that the trial judge was commenting on the evidence. The trial judge then had the jury taken from the courtroom and the discussion continued. After some interchange between Appellant's counsel and the trial judge, the jury was returned and the Appellant's attorney conducted the cross-examination of the witness without incident.

On another occasion, the trial judge overruled an objection made by the attorney. Because of the objection, the witness did not hear the question which had been asked. When the Assistant District Attorney General substantially restated the question, Appellant's counsel again objected and was reminded by the trial judge that the objection had already been overruled and directed that counsel be seated.

All of the other complaints made by the Appellant either occurred outside of the jury or were only rulings by the trial judge without comment. These were in no way offensive.

It would have been better had some exchanges between the trial judge and Appellant's counsel been avoided.

■ "A trial judge must be patient, yet firm, and not allow personal irritation to ruffle his judicial demeanor while trying a case." *Brooks v. State,* 187 Tenn. 67, 213 S.W.2d 7, 10 (1948). On the other hand, attorneys owe a corresponding duty to refrain from conduct which might create irritation in the trial of a case. At any rate, we do not find that these matters denied the Appellant a fair or impartial trial or affected the verdict of the jury. *Bivens v. State,* 4 Tenn.Cr.App. 580, 474 S.W.2d 431 (1971).

In conducting the poll of the jury, of which the Appellant also complains, the trial judge asked each juror to state what their verdict was. There were a variety of forms of expression, but each juror made clear that he had found the Appellant guilty and fixed the punishment at not less than four (4) years nor more than ten (10) years. The trial judge in many instances asked if the juror responding had found the Appellant guilty of conspiracy to commit murder. In each instance the question was answered affirmatively. This record shows no doubt but that each juror found the Appellant guilty of conspiracy to commit murder with a punishment of not less than four (4) years nor more than ten (10) years.

■ The object of polling the jury is to determine the certainty of each individual

juror's verdict. *Whitwell v. State*, 520 S.W.2d 338 (Tenn.1975). We think the trial judge should have, in polling the jury, announced the verdict as reported and then asked each individual juror if this was the juror's verdict. The juror would then be able to respond yes or no. This would avoid confusion created by the individual jurors stating their verdict. See 4 Wharton's Criminal Procedure § 586, at 148–154 (Torcia 12th Ed.1976).

Although the trial judge did not follow this procedure, this record clearly reflects that each juror had reached the verdict reported by the foreman.

The Appellant, also, cannot prevail on the error claiming that portions of the bench conferences were not included in the Bill of Exceptions.

■ If a party is of the opinion that a Bill of Exceptions as tendered is incorrect or incomplete, he may file a written objection to the Bill of Exceptions within ten (10) days after it has been filed. T.C.A. § 27–110. Beyond this, in order to prevail on this claim, the Appellant must show how he is prejudiced by the absence of the portions of the Bill of Exceptions. *Phipps v. State*, 4 Tenn.Cr.App. 511, 474 S.W.2d 154 (1971).

The Appellant did not file any objection in the trial court as provided by T.C.A. § 27–110. Neither has he shown any prejudice because of the alleged absence of portions of the Bill of Exceptions.

GERALD L. EWELL and SAM LEWIS, Special Judges, concur.