**STATE of Tennessee, Appellee,**

v.

**Donnie DePRIEST, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 28, 1985.

W.J. Michael Cody, Atty. Gen. & Reporter, Jerry L. Smith, Asst. Atty. Gen., Nashville, Guy R. Dotson, Murfreesboro, for appellee.

Scott Daniel, D.C. Daniel, Jr., Murfreesboro, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was indicted by the Rutherford County Grand Jury for the offense of first degree murder. He was convicted of involuntary manslaughter and sentenced to serve three (3) years imprisonment as a Range I standard offender. The trial judge suspended all but 119 days of the sentence, which are to be served in periodic fashion. The defendant has appealed his conviction. The State protests by appeal the granting of a suspended sentence.

The homicide in this case was the culmination of a marital triangle involving the defendant, his wife Hilda, and the deceased, Ronald Freson. The DePriests, who were the parents of two young female children, were in the midst of a divorce proceeding although they continued, for a time, to live in the same household. Defendant learned that Mrs. DePriest was seeing Freson. This initiated a series of confrontations between the two men, which were exacerbated by an effort toward reconcilation between the DePriests. It appears that Freson was intent on preventing this if possible. On September 11, 1982 the DePriests were discussing a resumption of their marriage and had arranged a dinner date for that night. Defendant went directly from his work about three or four o'clock in the afternoon to the apartment where Mrs. DePriest was then living. Informed by her sister that she had gone to the grocery, he left, saying he would return later. As he passed Mr. Freson's residence, which was in the vicinity, he spied his wife's car, stopped, knocked on the door, and called out her name. He received no response and returned to her apartment. In short order, Hilda DePriest came home, accompanied by Mr. Freson. Wishing to speak privately, defendant and Mrs. DePri-est moved to the front porch. Freson followed. The two moved into the yard, and again Freson endeavored to overhear their conversation. They moved away a distance to continue their discussion and, for an interval, Freson watched them. In the next few minutes they were interrupted by a neighbor's child, one of their own daughters, and by Mrs. DePriest's sister. Freson then approached and told Hilda she was needed by her sister at the apartment. Hilda DePriest preceded defendant and Freson back to the house, all three passing within earshot of a neighbor. This neighbor heard Freson make some reference to a fight, and "let's settle it now". Defendant admitted going to his car, taking out a double barreled shotgun, loading it, and releasing the safety, on the premise that he thought Freson was going into the apartment to obtain a gun. Defendant insisted that his gun discharged accidentally, that he had no intention of firing or fatally wounding Freson in the chest. At the time the gun discharged he knew that Freson was unarmed. After the shot he put the gun back in his car and waited for the police.

In his first issue defendant insists the court erred in admitting a voluntary statement made to the police at the time of his arrest to the effect that he had never been in trouble before. He argues the statement was irrelevant and calculated to prejudice his case by implying he intentionally lied to cover-up prior misdemeanor charges involving Mrs. DePriest and Freson.

■ The State never quite made clear the purpose in endeavoring to admit the statement, unless it was for the purpose of impeachment. The court ruled the statement to be admissible. The record clearly shows it was a voluntary, spontaneous statement. Subsequently the defendant was able to explain fully that his meaning was he had never been in trouble before his altercations with the deceased. Whether or not the statement was relevant or material, its admission was certainly not prejudicial. The issue is overruled.

Defendant insists the testimony of the witness, Julia Skinner, who lived approximately three hundred feet from where the shooting occurred, should not have been admitted. Mrs. Skinner testified she heard a loud "crack", stepped out her back door, and heard a male voice say, "I told you I was going to 'blank', and I did." She used the word "blank" because she could not recall if the voice said "shoot" or "kill". She could not identify the speaker. None of the other witnesses in the vicinity heard the statement. The testimony of the witness was admissible as evidence of a "spontaneous utterance" within the meaning of the res gestae rule, when such a declaration is contemporaneous with the event in question. A spontaneous utterance which qualifies under the rule is admissible without regard to whether its author is the defendant, the victim, or a bystander; and is admissible without regard to whether it inculpates or exculpates the defendant. It is admissible even though the witness cannot identify the declarant. Wharton's Criminal Evidence, 13th Edition, Vol. 2, Sec. 298–299; *Garrison v. State*, 40 S.W.2d 1009, 163 Tenn. 108 (1931). The fact that she could not remember the exact word to be either "kill" or "shoot" certainly did not effect the admissibility of her testimony. Had there been error, there certainly was no prejudice to the defendant. It must be noted that the issue of malice was sharply controverted. The jury saw fit to return a verdict of involuntary manslaughter. There could be no merit to this issue.

Defendant complains of evidence that he assaulted his wife in the victim's apartment, and destroyed some of the victim's property, as well as evidence that on the same night he destroyed some of his own property in his own home. The incident occurred when he found his wife at the victim's apartment, and also found some of his tools and personal property stored there. By his own admission, he slapped his wife, and used a chain saw to cut in half some stereo speakers belonging to Freson. He left to go to his own home where, apparently in a continued rage he destroyed some of the furnishings in the house.

The law is clear that evidence of his hostility toward the victim prior to the commission of the crime was relevant. *State v. Glebock*, 616 S.W.2d 897, 905 (Tenn.Cr.App.1981); *Burnett v. State*, 82 Tenn. 439 (1884). The same is not true of the evidence of the destruction of his own property. While it obviously showed his frustration upon learning of his wife's association with another it added nothing to show the relationship between the victim and him. However, the admission of the evidence was harmless as demonstrated by the verdict returned by the jury. Defendant did not deny the homicide, but insisted the shooting was accidental. The jury agreed with his version of the events. We find this issue to be without merit.

It is defendant's contention the trial court restricted his counsel in the cross-examination of two of the State's witnesses, one being his ex-wife, and the other her sister. Defendant's counsel persisted in a manner of cross-examination, over the State's objection, and in spite of the trial court's rulings that he refrain. We have examined the specific instances in the record where defendant insists the trial court interfered with the right of cross-examination. We find no error. The scope of cross-examination is within the trial court's discretion and his rulings will not be overturned in the absence of abuse. *Edwards v. State*, 424 S.W.2d 783, 786, 221 Tenn. 60 (1968). Leading questions are permissible in cross-examination but the examiner is not allowed to testify or introduce evidence. *Patty v. State*, 556 S.W.2d 776, 783 (Tenn.Cr.App.1977). The record clearly shows the court was not limiting the extent of cross-examination so much as how it was being conducted. The issue is without merit.

Defendant complains about evidence admitted relating to a restraining order obtained by his wife when she initiated divorce proceedings against him several months prior to the incident involving Mr.

Freson. The particulars of the divorce proceeding were irrelevant and immaterial to the issue of defendant's guilt or innocence of the crime for which he was on trial. There was a great deal of extraneous information introduced into this record, much of it interpolated by the defense. This particular bit of evidence did not prejudice the defendant. T.R.A.P. 36(b).

Defendant raises several issues relating to the court reading into evidence a prior statement made by his former sister-in-law who was a State witness. The incident occurred when defense counsel attempted to impeach her testimony through introduction of a prior inconsistent statement. On direct examination she had testified about a verbal exchange between defendant and Freson in which defendant had said, "well, I'll settle this once and for all." On cross-examination defense counsel endeavored to bring out that in a statement she had given to the police on the day of the homicide she had stated the defendant's remark was, "we'll just settle this right now." Upon the State's objection the court examined the prior statement made by the witness to the police and ruled that defense counsel must ask the witness the question in its entirety. He then ruled that the witness' statement must be read to the jury in its entirety. Defense counsel continued to argue against this requirement until the judge finally advised counsel that if he would not read the question and answer then the court would do so, and he subsequently did.

■ The question which was asked by the police officer was "but could you see them?", referring to the defendant and the victim. The witness gave a long, rambling, unresponsive answer which concluded with the remark purportedly made by defendant, "we'll just settle this right now." The small inconsistency in the testimony of the witness had negligible value for impeachment purposes, and the statement read by the trial judge certainly did not prejudice defendant. Defense counsel could have preserved his objection by simply complying with the trial court's request and raising that issue on appeal. Although he was correct in his assertion that the entire statement should not have been read into the record we find the error to be harmless. Only those portions of the original statement which showed inconsistencies in the witness' trial testimony should have gone to the jury. However, there was nothing in the statement which was not brought out during direct examination, and nothing which was particularly incriminating in the face of defendant's admissions.

■ Defendant contends the court's reading of the statement amounted to a disparagement of counsel and his defense. We disagree. The trial judge was patiently trying to control the conduct of the cross-examination. Both court and counsel owe a corresponding duty to refrain from conduct which might cause irritation to the other in the trial of a case. See *Goedel v. State*, 567 S.W.2d 180, 183 (Tenn.Cr.App. 1978). Once counsel has entered his objections and the reasons therefore, he has preserved his clients rights, and need not continue his argument after the court's ruling. We do not find any error on this issue which effected the verdict to defendant's prejudice.

■ Defendant attributes error to the trial court in refusing to allow cross-examination of Mrs. DePriest about what she had said to the defendant concerning the victim's treatment of her and their children, and the victim's personal background. It was the intent of counsel to show defendant's state of mind toward the accused by eliciting this testimony.

The defense in this case was that the homicide was an accident while defendant was endeavoring to protect himself from Freson. In *Williams v. State*, 565 S.W.2d 503, 506 (Tenn.1979) our Supreme Court said specifically:

"A defendant who has laid a proper foundation by pleading and evidence presenting the issue of self-defense may testify as to what he has been told of recent violent acts committed by deceased against others. Such evidence cannot be

adduced from witnesses other than defendant, as proof in chief, but may be offered as rebuttal, if the State presents evidence to disprove that defendant had received such information."

The defendant was not foreclosed from introducing evidence of acts of violence on the part of the victim. In fact he testified that Mrs. DePriest had told him of Mr. Freson's actions. The issue is without merit.

▇▇▇ Defendant takes issue with the exclusion of the testimony of a character witness he wished to call who had been a prospective juror not selected as a member of the panel hearing the case. We know of no reason why this witness could not have testified, however, his testimony would have been cumulative to that of several other witnesses defendant called to establish his reputation for peace, quietude and veracity. Improper exclusion of evidence is not grounds for reversal unless it affirmatively appears the alleged error has affected the results of the trial. *State v. Horne*, 652 S.W.2d 916, 919 (Tenn.Cr.App.1983). The testimony was cumulative and the error was harmless. T.R.A.P. 36(b).

▇▇▇ Defendant complains of exclusion of the testimony of a defense witness concerning statements made by him earlier on the day of the homicide which would have shown his state of mind. It is settled law that the accused could not have introduced the self-serving statement. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence. *Hall v. State*, 552 S.W.2d 417, 418 (Tenn.Cr.App.1977), citing Wharton's Criminal Evidence, 13th Edition, Sec. 303.

▇▇▇ Defendant contends the prosecutor made improper remarks during argument which denied him a fair trial. He gives twelve specific examples in support of this contention. It is not necessary to chronicle this list of complaints. Some of the re-

marks made exceeded the outer limits of proper argument. The trial judge gave short shrift to defense objections and indicated some lack of patience with defense counsel's objections. The trial judge's duty is to see that defendant is accorded a fair trial. See *Brooks v. State*, 213 S.W.2d 7, 10, 187 Tenn. 67 (1948). However, the record shows improper argument by prosecution and the defense. There were incidents where counsel bickered with each other without addressing the court. The personal opinions of counsel have no place at trial. *State v. Hicks*, 618 S.W.2d 510, 517 (Tenn.Cr.App.1981). Counsel should strive to maintain the dignity and decorum of judicial proceedings. Supreme Court Rule 8, Code of Professional Responsibility, EC7–36, 7–37, 7–38; DR7–106. We are of the opinion the conduct of counsel in this case did not effect the verdict. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn.Cr.App. 1976).

▇▇▇ Defendant says the trial court erred by summarily excusing co-counsel from the courtroom during rebuttal argument. During the closing statement of the District Attorney General lead counsel for the defense was objecting to what he believed was improper argument. During the exchange between lead defense counsel, the Court, and the Assistant District Attorney, co-counsel for the defense interjected himself into the discussion. The trial judge excused him from the courtroom without stating any reason for his actions. It appeared to be an attempt to control the situation by limiting the number of persons who could interrupt argument. The trial judge has the ultimate responsibility to control the proceedings before him. Under the circumstances existing we do not find anything improper in his action in excusing counsel from the courtroom.

▇▇▇ In the State's appeal they protest the action of the trial court in the partial suspension of defendant's sentence. There is evidence in the record to support the decision of the trial judge therefore that decision is binding on the appellate court.

See *State v. Neeley,* 678 S.W.2d 48, 50 (Tenn.1984).

The judgment of the trial court is affirmed.

DAUGHTREY and TATUM, JJ., concur.