# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 9, 2013 Session

## MARSHA HICKS v. JENNIFER PRAHL

**Appeal from the Circuit Court for Knox County**
**No. 1-453-10     Dale Workman, Judge**

_____

**No. E2013-00285-COA-R3-CV-FILED-MARCH 25, 2014**

_____

This negligence action arose from an automobile accident occurring on October 8, 2009, in Knox County. The plaintiff filed the instant lawsuit on September 7, 2010, alleging that the defendant was negligent in the operation of her vehicle, causing the rear-end collision. A jury trial was held November 8-13, 2012, at the conclusion of which the jury returned a verdict in favor of the defendant. The plaintiff filed a motion for new trial and a supplemental motion for new trial. The trial court denied these motions, determining that the evidence preponderated in favor of the jury's verdict. The plaintiff timely appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

Donna Keene Holt, Knoxville, Tennessee, for the appellant, Marsha Hicks.

James C. Cone and Ryan E. Jarrard, Knoxville, Tennessee, for the appellee, Jennifer Prahl.

## OPINION

### I. Factual and Procedural Background

The accident giving rise to this action occurred on the entrance ramp to the Pellissippi Parkway from Hardin Valley Road in Knox County. The plaintiff, Marsha Hicks, was operating her vehicle on the entrance ramp with the aim of entering Pellissippi Parkway, while the defendant, Jennifer Prahl, was driving her vehicle immediately behind Ms. Hicks's

vehicle with the same objective. Ms. Hicks testified that she had to slow down to negotiate a sharp curve in the ramp and upon so doing, her vehicle was struck from behind by Ms. Prahl's vehicle. In response, Ms. Prahl testified that Ms. Hicks's vehicle actually came to a complete stop on the ramp and then proceeded forward toward the merge lane. According to Ms. Prahl, when Ms. Hicks began moving forward, Ms. Prahl looked over her left shoulder to check for oncoming traffic and also began moving forward. Ms. Prahl then turned her gaze forward to discover that Ms. Hicks had once again come to a complete stop in front of her, even though there were no vehicles ahead of Ms. Hicks. As Ms. Prahl explained, she was unable to stop her car in time to avoid the collision with Ms. Hicks's vehicle.

It is undisputed that each vehicle was traveling at a slow rate of speed at the time the collision occurred. Neither party's airbag deployed. The vehicles, while sustaining limited damage, were fully operational following the accident. Neither party requested medical assistance at the scene. Ms. Hicks did, however, seek medical attention later that day. She subsequently claimed serious medical conditions were caused by this collision.

Ms. Hicks filed the instant action, alleging that Ms. Prahl was negligent in the operation of her vehicle and that her negligence caused the collision as well as Ms. Hicks's damages. In response, Ms. Prahl filed an answer, denying negligence and asserting the affirmative defense of sudden emergency. Ms. Prahl further "reserve[d] the right to rely upon the defense of comparative fault on the part of the plaintiff pending further discovery." Claiming a violation of Tennessee Rule of Civil Procedure 8.03, Ms. Hicks subsequently filed a motion seeking to strike the allegations of comparative fault, contending that Ms. Prahl did not plead any facts upon which comparative fault could be based. Upon a hearing, the trial court granted the motion, striking the allegations of comparative fault from the answer.

Following discovery, Ms. Prahl sought to amend her answer to again set forth allegations of comparative fault. Ms. Prahl asserted that Ms. Hicks's cellular telephone records confirmed that she was using the phone at the time of the accident. The trial court granted the amendment. Ms. Hicks then sought to increase her damages claim from $500,000 to $1,500,000. The trial court granted the respective request.

At the trial, Ms. Hicks's daughter testified that she had called her mother on her cellular telephone and was talking with her when the accident occurred. As she related, Ms. Hicks was talking via speaker phone while driving. She also testified that from her experience living near the scene of the accident, the entrance ramp presents a sharp curve requiring significant deceleration to maneuver. Ms. Hicks's husband corroborated this testimony regarding the configuration of the entrance ramp.

Ms. Prahl testified that Ms. Hicks came to a complete stop on the entrance ramp before reaching the merge lane and then began moving forward again. According to Ms. Prahl, she looked over her left shoulder to check for oncoming traffic and took her foot off the brake pedal. After checking for any traffic, Ms. Prahl looked forward and saw that Ms. Hicks had stopped again. Ms. Prahl explained that she quickly applied her brakes but could not stop in time to avoid a collision.

Ms. Prahl corroborated the previous testimony regarding a curve in the entrance ramp requiring deceleration before the merge lane. She explained that the roadway's curve allowed her to see ahead of Ms. Hicks's car and ascertain the absence of vehicles in front of Ms. Hicks. Ms. Prahl opined that no reason existed for Ms. Hicks's initially stopping on the entrance ramp. Further, she had no cause to expect that once Ms. Hicks began moving forward after the first stop, she would suddenly stop again. Ms. Prahl admitted she did not inform the investigating officer that Ms. Hicks had stopped twice. According to Ms. Prahl, she was not distracted at the time of the collision, was not using a cellular telephone, and was not in a hurry. Ms. Prahl indicated that she and her attorney had measured the merge lane, finding it to be 684 feet in length.

Ms. Hicks testified that she did not stop on the entrance ramp. According to Ms. Hicks, she merely slowed to negotiate the curve by taking her foot off the gas pedal. Ms. Hicks explained that she was driving slowly because traffic was heavy and she observed other vehicles approaching. At the time of the collision, Ms. Hicks and her daughter were talking on the cellular telephone. Although she admitted that she had to flip her phone open in order to answer the call, Ms. Hicks claimed that the phone was in a holder mounted to her dashboard and that she was talking via speaker phone.

When questioned about her averment in the complaint that she was "stopped to wait for traffic" when the collision occurred, Ms. Hicks explained that this statement was in error. She was then questioned about statements she made to personnel in the emergency room later in the day on October 8, 2009, wherein she reported that she was rear-ended while "sitting stopped in her car." Ms. Hicks testified that she could not remember making such statements. Ms. Hicks did admit that there was no traffic ahead of her in the merge lane when the accident occurred. Further, she refused medical assistance at the scene because she did not think it was a "major accident." Although Ms. Hicks conceded that speaking on a cellular telephone while driving can be a distraction, she was firm in her belief that she was not distracted at the time of this collision.

The jury found by unanimous verdict that Ms. Prahl was not negligent relative to the collision. The trial court entered a judgment dismissing Ms. Hicks's complaint with prejudice. Ms. Hicks filed a motion for new trial and a supplemental motion. The trial court

-3-

denied these post-trial motions, stating that the court had independently weighed the evidence as thirteenth juror and had determined that the evidence preponderated in favor of the jury's verdict. In support, the court made the following pertinent findings:

> The jury determined that the defendant was not at fault. The Court finds that the plaintiff's credibility was seriously challenged as to whether she stopped her car before the accident as she proceeded on the roadway where the accident occurred. Although the plaintiff testified that she did not stop her vehicle before the accident occurred, the preponderance of the evidence showed that the plaintiff alleged in her Complaint that she was stopped and told the investigating officer and medical personnel at the emergency room on the day of the accident that she was stopped when the accident occurred.

> The picture of the vehicles at the accident scene showed that the vehicles were not facing Pellissippi Parkway at 90 degrees. Instead, the front of each vehicle was pointed more toward the merge lane that parallels Pellissippi Parkway. The video from the investigating officer's vehicle shows the traffic pattern, the speed of the vehicles passing the accident scene, and the speed that would have to be attained to merge into that traffic. There was no proof presented that there was any traffic in front of the plaintiff's vehicle or anything that would have required her to proceed in an otherwise normal fashion.

> While it is highly doubtful that the jury accepted the plaintiff's testimony, the defendant's testimony was more credible. The preponderance of the evidence was consistent with the defendant's testimony that the plaintiff stopped her vehicle on the roadway for no apparent reason, and the defendant stopped her vehicle behind the vehicle operated by plaintiff without incident. The preponderance of the evidence showed that the plaintiff then engaged her vehicle to move forward again and the defendant turned her head to look left for traffic approaching from her left. The volume and speed of the approaching traffic on the day of the accident was shown in the video from the investigating officer's vehicle. After checking traffic approaching from the defendant's left, the defendant moved her vehicle forward to prepare to use the merge lane only to discover that the plaintiff had stopped her vehicle again for no apparent reason shown by the evidence.

> The Court finds that because of the unique nature of the location where the accident occurred and all of the other facts and circumstances, it was reasonable for the plaintiff to look to check for traffic to her left as she

-4-

testified, and the Court cannot say that the defendant's actions were unreasonable or negligent under all of the circumstances shown by the preponderance of the evidence.

Ms. Hicks filed a timely notice of appeal from this ruling.

## II. Issues Presented

Ms. Hicks presents the following issues for our review, which we have restated slightly:

1.      Whether there was material evidence to support the jury's verdict that Ms. Prahl was not negligent.[1]

2.      Whether, pursuant to Tennessee Rule of Civil Procedure 8.03, Ms. Prahl waived the affirmative defense of comparative fault by failing to state the facts in support of the defense.

3.      Whether the trial court's evidentiary rulings and comments made during trial demonstrated that Ms. Hicks was denied a full and fair hearing.

## III. Standard of Review

Our Supreme Court has recently elucidated the proper standard of review regarding an appeal of a jury's verdict:

> In reviewing a properly approved jury verdict, an appellate court may set aside findings of fact by a jury in civil actions "only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). In determining whether "there is material evidence to support the jury verdict, we 'take the strongest legitimate view of all the evidence in favor of the verdict, assume the truth of all evidence that supports the verdict, allow all reasonable inferences to sustain the verdict, and discard all countervailing evidence.'" *Barkes v. River Park*

---

[1] In her statement of the issues, Ms. Hicks additionally asks whether her motion for directed verdict on the issue of liability should have been granted. Her brief does not, however, contain any argument regarding such issue. Generally, "when a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012) (quoting *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)).

*Hosp., Inc.*, 328 S.W.3d 829, 833 (Tenn. 2010) (quoting *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006)).

*Wilson v. Americare Sys., Inc.*, 397 S.W.3d 552, 558 (Tenn. 2013). The Court has further explained:

> "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury. *Crabtree Masonry Co.*, 575 S.W.2d at 5.

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009).

IV. Material Evidence to Support Verdict

Ms. Hicks contends that no material evidence was presented to support the jury's verdict that Ms. Prahl was not negligent. She asserts that Ms. Prahl was following too closely and was not in reasonable control of her vehicle. Ms. Hicks urges that, even assuming *arguendo* that she did stop twice, Ms. Prahl should have acted with greater care and watched Ms. Hicks's vehicle more closely after the first stop.

In this negligence action against Ms. Prahl, Ms. Hicks was required to prove that (1) Ms. Prahl owed her a duty of care; (2) Ms. Prahl's conduct fell below the applicable standard of care, amounting to a breach of that duty; (3) Ms. Hicks suffered an injury or loss; (4) Ms. Prahl's actions were the cause in fact of the injury or loss; and (5) Ms. Prahl's actions were the proximate, or legal, cause of the injury or loss. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Taking the strongest legitimate view of all the evidence in favor of the verdict, assuming the truth of all evidence that supports the verdict, allowing all reasonable inferences to sustain the verdict, and discarding all countervailing evidence, we conclude that there is material evidence in the record to support the jury's verdict that Ms. Prahl was not negligent. *See Wilson*, 397 S.W.3d at 558.

Ms. Prahl testified that Ms. Hicks stopped her vehicle twice on the entrance ramp. The evidence is undisputed that nothing was in front of Ms. Hicks's vehicle that would have caused her to stop. Also undisputed is the existence of a sharp curve in the approach ramp warranting vehicle deceleration but not requiring a driver to bring the vehicle to a complete stop to negotiate the curve.

Ms. Prahl testified that once Ms. Hicks made her initial stop, Ms. Hicks proceeded to

drive forward toward the merge lane, which ran parallel to the roadway. At that time, Ms. Prahl felt it necessary to look over her left shoulder to view any approaching traffic before entering the merge lane. As she explained, this required her to "crane her neck over her shoulder." According to Ms. Prahl, she had no cause to expect Ms. Hicks to stop a second time, as there was no apparent reason to support such a stop. As Ms. Prahl lifted her foot off the brake pedal, her car began to move forward. Turning to look ahead, she discovered that Ms. Hicks had once again stopped in front of her. Ms. Prahl could not stop her vehicle in time to avoid a collision.

As the trial court specifically found, the video from the officer's dashboard camera demonstrates the high volume of traffic on the roadway and the significant speeds of approaching vehicles. Having carefully reviewed the evidence, and considering the totality of the circumstances, we cannot conclude that it was unreasonable for Ms. Prahl to (a) expect Ms. Hicks to continue moving forward into the merge lane and (b) look over her left shoulder to check for oncoming traffic. As such, Ms. Prahl did not breach any duty of care that she owed to Ms. Hicks. We therefore find that there was material evidence in the record to support the jury's verdict that Ms. Prahl was not negligent.

### V. Comparative Fault

Ms. Hicks contends that Ms. Prahl should not have been allowed to assert comparative fault at trial because this affirmative defense had been stricken from her answer based on a lack of factual foundation. Ms. Hicks also argues that her open cellular telephone connection at the time of the accident does not, in and of itself, establish comparative fault. According to Ms. Hicks, the cellular telephone connection was not a newly discovered fact at the time Ms. Prahl sought to amend her answer.

Ms. Prahl contends, without conceding that she waived the defense of comparative fault, that the issue of comparative fault is irrelevant because the jury found that she was without fault. As such, the jury never reached the question of comparative fault. We agree.

As our Supreme Court has explained:

> In adopting comparative fault, we attempted to reconcile the plaintiff's interest in being made whole with the defendant's interest in paying only that percentage of damages for which that particular defendant is responsible.

*Brown v. Wal-Mart Disc. Cities*, 12 S.W.3d 785, 787 (Tenn. 2000). Therefore, the allegation of comparative fault by a defendant does not change the fact that the plaintiff in a negligence action must first show that the defendant was actually negligent. *See, e.g., Secrest v. Haynes*,

No. M2002-01895-COA-R3-CV, 2003 WL 22071546 at *6 (Tenn. Ct. App. Sept. 8, 2003).

As previously explained, the jury found that Ms. Prahl was not negligent, and there is material evidence to support that verdict. Because the jury found that Ms. Prahl was not at fault relative to the accident, the jury never reached the issue of whether Ms. Hicks exhibited comparative fault. *See Land v. Dixon*, No. E2012-02341-COA-R3-CV, 2013 WL 6182040 at *7 (Tenn. Ct. App. Nov. 25, 2013) ("Because the jury found no fault on the part of defendants, they did not reach the comparative fault analysis."); *Bolt v. Owens-Illinois*, No. 03A01-9410-CV-00368, 1995 WL 322007 at *5 (Tenn. Ct. App. May 30, 1995) ("Since the jury found there was no fault by either of the Defendants, they did not reach the issue of comparative fault among parties or nonparties."). Any issue regarding comparative fault is therefore moot.

## VI. Fairness of Trial Proceedings

Ms. Hicks asserts that during trial and in the presence of the jury, the trial court made improper comments suggesting that her counsel was being unfair in questioning Ms. Prahl and was trying to mislead the jury rather than address the facts. Ms. Hicks maintains that her counsel was attempting to cross-examine Ms. Prahl regarding her pleadings as well as the fact that she did not, in her original answer, state a factual basis for the defense of comparative fault. Ms. Hicks claims that through "repeated *sua sponte* objections," the trial court implied that counsel's questions were unfair and that she was trying to "make up" testimony. The court explained to the jury that an inadequate pleading had been amended. When her counsel "tried to clarify for the record what the point was regarding the need for more information," the trial court told counsel in front of the jury, "you're trying to put a spin on something rather than deal with what actually happened." Ms. Hicks contends that the trial court's comments in the presence of the jury amounted to prejudicial and reversible error.

Ms. Prahl asserts that Ms. Hicks's counsel was attempting to mislead the jury, based on an unfair reading of the answer, into thinking that Ms. Prahl had denied Ms. Hicks stopped in front of her. Ms. Prahl maintains that the trial court tried to point out to Ms. Hicks's counsel that she was inaccurately construing the answer, but counsel persistently attempted to mischaracterize the answer, more than once disagreeing with the trial judge about the matter. Following a thorough review of the record, we agree with Ms. Prahl.

The transcript demonstrates that Ms. Hicks's counsel was cross-examining Ms. Prahl regarding paragraph three of her answer when the alleged improper comments were made by the court. In paragraph three of the pleading, Ms. Prahl admitted that her vehicle came in contact with Ms. Hicks's vehicle. She denied, however, the other allegations, including

that when Ms. Hicks "stopped to wait for traffic," Ms. Prahl failed to stop, "causing her vehicle to slam into the rear of the Plaintiff's vehicle." Ms. Hicks's counsel, during her cross-examination of Ms. Prahl, inquired if Ms. Prahl had denied in her answer that Ms. Hicks had stopped her vehicle and Ms. Prahl had not. The judge admonished Ms. Hicks's counsel that this was not proper questioning because it misrepresented the language of the answer.

Ms. Hicks's counsel continued to pursue the line of questioning, drawing further admonishment from the court. She then asked Ms. Prahl, "And your attorney did not say, at the time you answered that Complaint, that Ms. Hicks was at fault at all, did he?" A bench conference was held outside the hearing of the jury regarding this issue. Counsel subsequently asked Ms. Prahl, "Now, in – in fairness, you did later amend your Answer, your attorney did, and did plead fault against Ms. Hicks?" The ensuing exchange occurred:

| | |
|---|---|
| The Court: | No, Counsel. What happened was, he originally pled something improperly, trying to complete comparative fault, you objected, I sustained it, and then he specifically put out what the basis was. |
| Ms. Holt: | Right. And pleadings were filed – |
| The Court: | So that's what happened. I don't want to hear – |
| Ms. Holt: | (Overlapping speech) needing more information. Needing more information, Your Honor. |
| The Court: | Counsel. Counsel, I tried to tell you up here not to get into it, you didn't listen. Okay. You raised it again, so this jury's entitled to know fairly what happened. |
| | He pled in his original Answer comparative fault, which is attempt to plead other people's negligence, did not set forth facts. You objected, properly, because it did not set forth facts. I sustained. Then he later came back and amended and added some specific language alleging comparative fault. |
| Ms. Holt: | And we can – |

The Court:    Now, that's what happened.

Ms. Holt:    – put it on the record later about the in between on the information, needing more information.

The Court:    Counsel.

Ms. Holt:    Okay.

The Court:    You're trying to put a spin on something rather than deal with actually what happened. Okay? You want to ask this lady what she told you in the deposition the first time you asked her questions, ask her, but get away from what was in the pleadings.

Our thorough review of the transcript reveals that Ms. Hicks's counsel proceeded, despite multiple warnings, to disagree with the trial court. Counsel refused to accept the court's admonishment that she was misrepresenting aspects of Ms. Prahl's answer. Comments of the trial court related to plaintiff's counsel failing to abide by the ruling of the court.

In an action involving "sharp" exchanges between the judge and counsel occurring in the presence of the jury, *Goedel v. State*, 567 S.W.2d 180 (Tenn. Crim. App. 1978), our Court of Criminal Appeals explained:

> "A trial judge must be patient, yet firm, and not allow personal irritation to ruffle his judicial demeanor while trying a case." *Brooks v. State*, 187 Tenn. 67, 213 S.W.2d 7, 10 (1948). On the other hand, attorneys owe a corresponding duty to refrain from conduct which might create irritation in the trial of a case.

*Goedel,* 567 S.W.2d at 183.

In this action, Ms. Hicks's counsel tenaciously pursued questioning regarding Ms. Prahl's answer that the court clearly considered to constitute a misrepresentation of the pleadings and the procedural posture of the case. Despite continued admonishments from the court, counsel continued on this course, necessitating the trial judge's explanation of the case's procedural history to the jury. We conclude that the trial court's comments were the

direct result of counsel's actions in front of the jury and do not rise to the level of reversible error.

Finally, Ms. Hicks argues that she should be allowed to address an issue with regard to the jury instructions given even though she did not raise this issue at trial or in her motion for new trial. Further, she did not raise this issue in the statement of the issues in her appellate brief. It is well settled that:

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Moreover, an issue on appeal may be deemed waived when it is argued in the appellate brief but is not designated as an issue in accordance with Tennessee Rule of Appellate Procedure 27(a)(4). *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). As such, we find that any issue involving the jury instructions has been waived.

## VII. Conclusion

The jury's verdict finding no liability on the part of Ms. Prahl is affirmed. Costs on appeal are taxed to the appellant, Marsha Hicks. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE