BROOKS *v.* STATE.

(*Nashville,* December Term, 1947.)

Opinion filed July 17, 1948.

MARY GUIDI, of Memphis, for plaintiff in error.

J. MALCOLM SHULL, Assistant Attorney-General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Brooks was convicted of carrying a pistol, with his punishment fixed at a fine of $50 and a workhouse sen-

tence of eleven months and twenty-nine days, from which he appeals.

Brooks, a Negro man, admits carrying the pistol, wrapped in paper and in a shoe box, unloaded, to the home of his former paramour. He says she asked to borrow the pistol. His story is sharply contradicted by the State's witnesses. They say the prosecutrix (the paramour), her daughters and a male friend of the prosecutrix along with Brooks were at the home of the prosecutrix when an argument started. When Brooks was asked by one of the daughters to stop arguing with her mother he took the pistol from inside his shirt and began shooting. During this shooting the prosecutrix received a bullet wound in her thigh.

■ Brooks claims the prosecutrix was attempting to shoot him because he had married and left her. He says that she was shot in a scuffle over the pistol when she thus tried to shoot him. Be this as it may, the evidence clearly makes a jury question when fairly submitted to them.

Two indictments grew out of these facts: (1) The indictment under which this conviction was had, and (2) an indictment charging an "assault with intent to commit murder in the first degree" on the prosecutrix herein. When the present case was called for trial the case under (2) "was dropped from the calendar."

A jury was then selected, statements of counsel made, witnesses sworn and placed under the rule, "the indictment read and the plea of not guilty entered" by the defendant. The minute order of the same day shows the jury found the defendant guilty after he had plead not guilty to the indictment "and for his trial put himself upon the Country and the Attorney General doth the like."

After the State completed its proof in chief the defendant, plaintiff in error here, took the stand. On cross examination the District Attorney General asked him "if he did not plead guilty to the charge for which he was then on trial, when he was arraigned." We quote the record, which is in narrative form. We quote further from the record: "State's counsel stated to the Court that defendant had plead guilty on arraignment and that the plea had not been set aside.

"The defendant's counsel objected to this matter being discussed before the jury, that same was prejudicial to the defendant, and asked that the jury be excused by the Court, when the Court, addressing Miss Guidi, and ignoring her objections to discussion of the matter before the jury said: 'Had it been called to my attention this morning that he plead guilty to this pistol charge, you would not be here trying this case now; it is due to your lack of knowledge of the law that no order was entered setting aside that plea.' "

When and how a plea of guilty may be set aside and a plea of not guilty entered is fully discussed in an opinion by the present Chief Justice in *Henning* v. *State*, 184 Tenn. 508, 201 S. W. (2d) 669. The questions therein considered are not now before us.

Here the record shows the parties went to trial on a plea of Not Guilty and the verdict was returned after considering the evidence on this plea. The first and only intimation of a previous plea of guilty comes through a question to the defendant on cross examination. Under these circumstances it seems clear to us that the State, having thus proceeded, waived the former plea of guilty and any formal order setting the same aside, and elected to try the defendant on his plea of Not Guilty.

The converse of this proposition was held in *Stewart* v. *State,* 164 Tenn. 202, 46 S. W. (2d) 811. A *fortiori* the rule should apply to a defendant.

■ ■ Having thus proceeded, it was erroneous for the State to ask the defendant on cross examination "if he did not plead guilty to the charge." In *Kercheval* v. *United States,* 274 U. S. 220, 47 S. Ct. 582, 583, 71 L. Ed. 1009. Mr. Justice BUTLER speaking for the Court said:

"A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. (Citing authority.) But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. Such an application does not involve any question of guilt or innocence. (Citing authority.) The court in exercise of its discretion will permit one accused to substitute a plea of not guilty and have a trial if for any reason the granting of the privilege seems fair and just. (Citing authority.)

"The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight the court reinstated it

*pro tanto.* (Citing authority.) The conflict was not avoided by the court's charge. Giving to the withdrawn plea any weight is in principle quite as inconsistent with the prior order as it would be to hold the plea conclusive. Under the charge, if the plea was found not improperly obtained, the jury was required to give it weight unless petitioner was shown to be innocent. And, if admissible at all, such plea inevitably must be so considered. As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial. Its introduction may have turned the scale against him. 'The withdrawal of a plea of guilty is a poor privilege, if, notwithstanding its withdrawal, it may be used in evidence under the plea of not guilty.' "

In the *Kercheval Case, supra,* the lower court was reversed because of questions on the plea of guilty. In the instant case the remarks of the Court in the presence of the jury added fuel to the flames started by the question. These remarks by the trial court were clearly prejudicial to the defendant.

In addition to the above quoted remarks of the trial judge to counsel for the defendant, the record contains other statements to counsel which are not conducive of a fair and dignified trial. Some of these remarks are:

"That she was not playing with paper dolls, that he would not tolerate her conduct and that her conduct was not what it should be, and to sit down."

"I do not care about that, or about your representing him,. I always have the public defender in court when they are arraigned; you should have entered an order setting aside the plea, now, you, sit down."

"All right, all your exceptions are noted, you can have

all your exceptions''; and again ''all right, all right, all your exceptions are noted, all of them, go on.''

In the brief of the State here it is said:

''The State does not attempt to justify the comments of the trial Court imputing to counsel for the plaintiff in error a lack of knowledge of law nor his statement that she was in a Court of Law, a criminal Court, and that she was not playing with paper dolls, that he would not tolerate her conduct and that her conduct was not what it should be, and to sit down. It is respectfully suggested, however, that these comments were more the source of embarrassment to counsel than of prejudice of the defendant.''

■ This course of disparagement of counsel and of the defense, naturally conveyed to the jury, was not easily effaced. The jurors were likely influenced by the actions of the judge and the feeling manifested in his words and rulings during the trial. A trial judge should be very careful and not give expression to any thought that would be calculated to lead the jury to infer that his opinion was in favor or against the defendant in a criminal trial. ''One of the first purposes of orderly administration of the law is that a defendant, whether guilty or innocent, shall be accorded a fair trial. The fact that the judge may consider the accused to be guilty in nowise lessens his duty to see that he has a fair trial.'' *People* v. *Rongetti,* 331 Ill. 581, 163 N. E. 373, 379.

■ It is obvious from reading this transcript that counsel for the defendant is not entirely blameless. This though should not be charged to the defendant unless some act was done deliberately. Nothing of the kind appears herein. A trial judge must be patient, yet firm, and not allow personal irritations to ruffle his judicial demeanor while trying a case.

Complaint is made to a question permitted to be brought before the jury by State's counsel on the cross examination of the accused testifying in his own behalf. He was asked "if he was not the same Goldie Brooks, who was defendant in an indictment against Goldie Brooks, pending, of assault with intent to commit murder in the first degree", to which he replied in the affirmative.

■ Soon after the passage of the Act of 1887 (Chapter 79) authorizing defendants in criminal courts to testify in their own behalf, this Court, in considering and construing the Act (*Peck* v. *State,* 86 Tenn. 259, 6 S. W. 389, 390, *Morgan* v. *State,* 86 Tenn. 472, 7 S. W. 456), held that, "when he elects to place himself upon the stand as a witness, he can be treated in all respects as any other witness"; that he subjects himself to all the rules and tests of credibility, and may be impeached in the same manner as any other witness"; thus opening the door for cross examination as to former convictions, and previous acts of moral turpitude, subject always to the limitation of such evidence to its effect on his credibility as a witness. In *Kirby* v. *State,* 182 Tenn. 16, 20, 184 S. W. (2d) 41, 42, Mr. Justice GAILOR speaking for the Court said:

"(1) The rule with regard to the admission of evidence of other offenses on a criminal trial is well stated to be: 'Evidence material to the issue under investigation in a criminal case is never rendered incompetent because it tends to show that the accused has committed other crimes. It is competent or incompetent according to whether it is relevant to the issue on trial and has probative value. If incompetent by that test, its tendency to show guilt of another offense may cause it to be prejudicial to the accused and therefore ground for reversal.'"

76

When and to what extent this cross examination may be indulged in has been dealt with in *Zanone* v. *State,* 97 Tenn. 101, 36 S. W. 711, 35 L. R. A. 556; *Ryan* v. *State,* 97 Tenn. 206, 36 S. W. 930; *Powers* v. *State,* 117 Tenn. 363, 97 S. W. 815; and in *Keith* v. *State,* 127 Tenn. 40, 152 S. W. 1029, 1030, where this Court said that the rule that "where the prisoner is a witness in his own behalf, . . . . on cross examination, he may, for the purpose of affecting his credit as a witness, be questioned about special acts of moral turpitude." This is about the extent of our former holdings. In so far as we know, no reported case has directly ruled on the question here involved, wherein the indictment does not involve an act of moral turpitude.

■ "Moral turpitude" has no satisfactory definition. Vol. 2 Bouvier's Law Dictionary, Rawle's 3rd Rev., gives the accepted legal definition of the term as: "An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowmen or to society in general, contrary to the accepted rule or right and duty between man and man."

According to Wharton's Criminal Evidence, volume 3, page 2198, section 1321, and page 2266, section 1381, there is a marked division in the authorities as to whether or not a witness may be cross examined for impeachment purposes as to prior accusation or indictment which did not result in a conviction. "The division of the courts upon these questions is the result of a similar division upon the question whether proof of such matters is admissible in any form to impeach the witness." Wharton, *supra.*

■ We have examined many cases on the subject from various jurisdictions. Some limit the cross exami-

nation to "the sound discretion of the court." *Pierson* v. *State,* 188 Ind. 239, 123 N. E. 118, 120. Some limit the cross examination to the showing of a conviction "of a felony, but not that he has been indicted, only." *People* v. *Newman,* 261 Ill. 11, 103 N. E. 589, 590. The Arkansas courts say: "A witness cannot be interrogated for purposes of impeachment by asking him about indictments or mere accusations." *Diffie* v. *State,* 165 Ark. 613, 265 S. W. 72, 74. The New York courts are to the same effect. Their reasoning being: "An indictment is a mere accusation, and raises no presumption of guilt. It is purely hearsay, for it is the conclusion or opinion of a body of men based on ex parte evidence." *People* v. *Morrison,* 195 N. Y. 116, 88 N. E. 21, 22, 133 Am. St. Rep. 780, 16 Ann. Cas. 871. After reviewing the above cited cases and others we have concluded that the fair rule to be applied is, that when a defendant takes the stand in his own behalf, he may not be cross examined about pending indictments against himself, because of the reasons above quoted from the New York opinions which we adopt.

It is very earnestly argued that the Trial Judge erred in only allowing fifteen minutes for defense argument of the case. The State was granted the same amount of time. The general and well recognized rule on this question is well stated thus:

". . . the limitation of the time for argument by the counsel for either side is in the discretion of the trial court, notwithstanding accused's constitutional right to be heard by counsel. However, the accused's constitutional right to be heard by himself and counsel necessarily includes a reasonable time for argument, and the court in the exercise of its discretion should not so limit the time as to practically deny such right, but should al-

low a reasonable time for arguing the law and the facts, taking into consideration the circumstances of the case, including its complexity or simplicity, the amount and character, whether direct or circumstantial, of the testimony taken, the number of witnesses which have been examined, contradictions in the evidence, and the time which has already been consumed in hearing it.'' 23 C. J. S., Criminal Law, sec. 1084, page 524.

This rule is reasonable. No trial court can fix and specify any set rule whereby a definite time is fixed in which to argue any and all cases. Of necessity the time to be used must be left to the discretion of the trial judge who takes various things into consideration in fixing time for argument. The discretion to be exercised is not an arbitrary or willful discretion, but a discretion with regard to what is right and equitable under the circumstances and law, and directed by reason and conscience to a just result. In the instant case, under the record before us, we cannot say that the trial judge abused this discretion.

For the reasons herein given this case must be reversed and remanded for a new trial.