291 So.2d 338

Virgil BROADWAY

v.

STATE.

1 Div. 404.

Court of Criminal Appeals of Alabama.

Jan. 2, 1974.

Rehearing Denied Jan. 29, 1974.

William J. Baxley, Atty. Gen., and Charles R. Hare, Jr., Sp. Asst. Atty. Gen., for the State.

———◆———

Donald E. Brutkiewicz, Mobile, for appellant.

HARRIS, Judge.

Appellant was put to trial in the Circuit Court of Mobile County upon an indictment for perjury. Omitting the formal parts, the indictment reads as follows:

"The GRAND JURY of said County charge, that, before the finding of this

indictment VIRGIL BROADWAY whose name is to the Grand Jury otherwise unknown than as stated, on his examination as a witness, duly sworn to testify, on the habeas corpus proceeding of Evelyn Louise Jordan vs State of Alabama, in the Circuit Court of Mobile County, Alabama which said Court had authority to administer such oath, falsely swore that he saw Evelyn Louise Jordan at the scene of the shooting of L. Quincey Rhoten, the matters so sworn to being material, and the testimony of the said Virgil Broadway being wilfully (sic) and corrupty (sic) false, against the peace and dignity of the State of Alabama."

At the time of the alleged offense, appellant, a Negro boy, was fifteen (15) years of age. Upon his appearance in court, attended by counsel, he requested that he be treated as a youthful offender. He agreed to waive trial by jury and the trial court called for a probation officer's report to aid him in determining if he qualified for treatment under the Youthful Offender Law and passed the case. Upon the filing of the probation officer's report, a hearing was held. At this hearing the trial court interrogated appellant at great length as to his rights to a public trial by a jury, his right to confront his accusers, his right to testify in his defense if he so desired, his right to compulsory process to have his witnesses in court, and the range of punishment for the offense of perjury.

The court further told appellant that if the court decided to treat him as a youthful offender, he would have to give up these rights and plead guilty to the offense of being a youthful offender and the court would determine his punishment. The court explained that the maximum punishment for the latter offense was three years in the penitentiary and a fine up to one thousand dollars. Appellant made clear to the court he wanted the benefits of the Youthful Offender Act. Thereupon a jury trial was waived and a guilty plea was accepted.

In the light of appellant's unblemished record as to encounters with law enforcement officers, his attorney made an impassioned plea for probation. The Assistant District Attorney made an equally impassioned plea that appellant be sentenced to the penitentiary for at least one year. This plea for denial of probation was grounded on the ancient concept of punishment which is "an eye for an eye, and a tooth for a tooth." It was the state's position that the perjured testimony of appellant caused an innocent woman to be denied bond on a first degree murder charge and confined in the Mobile County jail for eleven months. The woman mentioned in the indictment, Evelyn Louise Jordan, was released from jail after two other women confessed to the murder of L. Quincey Rhoten, for whose death Ms. Jordan had been charged.

The debate between the state's attorney and appellant's attorney on the issue of punishment became so heated, vituperative and vehement, as to result in charges and countercharges, recriminations heaped upon recriminations, that their voices reached the level of crescendos. It appeared to appellant's attorney that the state's attorney might be "carrying the day." He sought, and was granted, permission to withdraw the guilty plea and a day was set for the trial of appellant as a youthful offender.

At trial the state, without objection, introduced into evidence the transcript of appellant as a state's witness in the habeas corpus proceeding filed by Evelyn Louise Jordan seeking bond on the murder charge pending against her. According to his testimony in this proceeding, appellant was at a friend's house near the place where the killing occurred. He left to go to a neighborhood store to get a package of cigarettes and a pack of gum. While walking along a path in a park he heard four or five shots. The shots came from the direction he was going. He continued walking and came to a street where he saw a red automobile with a Mississippi tag parked in the street without the head or tail lights on. When he got within about twenty feet of the car he observed that both front doors of the ve-

hicle were wide open. The dome light of the car was on and he saw two females on opposite sides of the car. He fixed the time between eight and nine o'clock p. m. He recognized the woman on the driver's side. She was Evelyn Jordan. It appeared to him that she was wearing psychedelic pants and was stooping over. He moved closer to the rear of the car and saw the woman on the passenger's side reaching over into the car. When she raised up he saw her face. Some of her front teeth were missing and her hair was fairly short. He had seen her before but could not recall her name. He heard Evelyn Jordan tell the other woman to "hurry up."

He saw an object on the ground on the driver's side of the car but did not know it was a man's body at that time. He continued on to the store and found it closed. He waited around the store about five minutes expecting the owner of the store to return and open it but no one came. He left and traversed the route that brought him to the store. As he approached the parked car, he saw a number of police cars around and they had blocked off the street. He did not stop and report to the police what he had heard and seen. A few minutes later he returned to the scene with a boy and his grandmother who had also heard the shots. He got near enough on this occasion to observe a man lying face down on the ground and saw lots of blood around him.

In conducting an investigation relative to the homicide the officers received information that appellant could probably give them the information they wanted. The officers interviewed appellant on one or more occasions and he was reluctant to talk. According to the officers, they appealed to him to tell the truth, stating that something similar might happen to his own family. He finally told the officers what he knew as set forth above. The next day they picked up appellant and carried him to the Sheriff's Department. He told the same story to a detective. Appellant signed a waiver of rights form after he was given the *Miranda* warnings. He then signed a written state-

ment substantially like the testimony he gave at the habeas corpus hearing. Appellant was carried to the District Attorney's Office where the district attorney interrogated him and taped the interview. There he reaffirmed his story. On the strength of these several interviews, Evelyn Jordan was arrested for the murder of Rhoten. Appellant appeared before the Grand Jury and testified as a witness against Ms. Jordan. His testimony was recorded. Ms. Jordan was indicted for murder in the first degree. She demanded and was given a preliminary hearing. Appellant testified at the preliminary hearing as a witness ·for the state, giving substantially the same testimony he subsequently gave at the habeas corpus trial and the statements he gave on every interview and before the Grand Jury. She was bound over without bond.

Eleven months later appellant repented and recanted his testimony and statements. Following this he was indicted for perjury. When he appeared· before the trial court seeking to be treated as a youthful offender, he was duly sworn and testified that he "lied" when he said Evelyn Jordan was at the automobile on the night that Rhoten was killed. He claimed that he told the law officers when they interviewed him on two or three occasions that he did not know anything about the killing and had not been in the area where the body was found. He stated the officers kept telling him that if he withheld information concerning a felony that he would be guilty of a crime and would be committed to the detention home. The repeated threats of being sent to the detention home was just more than he could take and he had rather see a woman go to the electric chair than allow himself to be confined in such a place. He said the officers brought two photographs to him and told him they thought these were the women who were involved, and he then picked out Ms. Jordan and made up the monstrous story; that because of police harassment and threats he finally succumbed to their suggestions that Ms. Jordan was involved.

The officers denied making any threats to him with reference to jail or the detention home.

Over appellant's objections, the trial court admitted into evidence a transcript of his testimony before the Grand Jury, his testimony at the preliminary hearing, his testimony at the habeas corpus trial, his signed statement to the investigating officers, the testimony of the law officers, testimony of the district attorney, and appellant's testimony before the trial judge in which he confessed perjury before he was allowed to withdraw his guilty plea.

The two law enforcement officers who investigated the murder case testified that they did not know that appellant had recanted his testimony. They further testified that they believed appellant when he signed the written statement concerning the homicide. They believed he told the truth at the preliminary hearing and at the habeas corpus hearing, and, furthermore, *they still believed he had told the truth.*

When the state rested, appellant moved to exclude the evidence on the ground that the state failed to prove the corpus delicti. The court overruled the motion and adjudged appellant guilty of the offense of being a youthful offender. Appellant, in response to a question from the court, told the court that he did not have anything to say with reference to why the judgment and sentence of the law should not be passed upon him. The court committed him to the Director of the Department of Corrections of the State of Alabama for a term of one year to be served in the Mobile Juvenile Home of Mobile County.

Appellant gave immediate notice of appeal and requested a free transcript. Appellant's request was granted and his trial counsel was appointed to represent him on this appeal.

After appellant's guilty plea was withdrawn, he did not thereafter take the witness stand.

We are compelled to reverse.

To authorize a conviction for perjury, as detestable as that crime is, there must be two witnesses, or one witness with strong corroboration. There can be no conviction of the crime of perjury on the *unaided testimony* of a single witness. *This would be oath against oath.* Peterson v. State, 74 Ala. 34. This is precisely what occurred in this case if we can legally consider appellant's recanting testimony before he was allowed to withdraw his guilty plea.

The law is well settled that where the state relies on proof of two contradictory sworn statements without any evidence to show that the testimony alleged in the indictment was false, and the jury (court) was of necessity left to the task of determining which of the two indicated statements was willfully and corruptly false, the burden of proof on the state was not sustained. Williams v. State, 34 Ala.App. 462, 41 So.2d 605.

The effect of the court's order in permitting the withdrawal of the guilty plea was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against appellant was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. Such is the weight of authority in this country. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582 at page 583, 71 L.Ed. 1009; State v. Wright, 103 Ariz. 52, 436 P.2d 601; White v. Georgia, 51 Ga. 285; Dean v. State, 72 Tex.Cr.R. 274, 161 S.W. 974; Brooks v. State, 187 Tenn. 67, 213 S.W.2d 7; State v. Joyner, 228 La. 927, 84 So.2d 462.

Thus, in this case the state used the sworn testimony of appellant before the trial court to impeach and contradict his previous sworn testimonies to hinge a conviction of perjury on the allegations laid in the indictment. The testimony of every witness for the state was in corroboration of appellant's testimony at the habeas corpus hearing. Not a single witness was produced to testify that his sworn testi-

mony was false. In a court of law nothing is more unsatisfactory than recanting testimony. This falls far short of the proof required in perjury prosecutions.

The trial court was without warrant to consider the guilty plea and the sworn testimony in connection therewith after allowing the plea to be withdrawn, and the state having failed to introduce any additional extrinsic evidence going to establish the falsity of appellant's sworn testimony given at the habeas corpus hearing, the corpus delicti was not proved. This may appear to be a miscarriage of justice and, indeed, it is, but when the law is respected and followed, justice will not be hurled from her high seat in a civilized society.

The court erred to a reversal in overruling appellant's motion to exclude the state's evidence.

Reversed and remanded.

All the Judges concur.