# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 29, 2002

## STATE OF TENNESSEE v. CHAD CRABTREE

**Appeal from the Criminal Court for Hamilton County**
**No. 23446     Stephen M. Bevil, Judge**

---

### No. E2001-02374-CCA-R3-CD
### January 31, 2003

---

The defendant, Chad Crabtree, was convicted of three counts of rape of a child, Class A felonies. The trial court imposed concurrent twenty-five-year sentences. In this appeal, the defendant asserts (1) that the trial court erred by denying his access to certain records regarding the victim and the lead investigator; (2) that the evidence was insufficient to support one of his convictions; (3) that the trial court was not impartial; (4) that a witness for the state improperly bolstered the credibility of the victim; and (5) that the sentence was excessive. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Donna Robinson Miller (on appeal) and Myrlene Marsa (at trial), Assistant District Public Defenders, for the appellant, Chad Crabtree.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; and Yolanda Mitchell and Barry A. Steelman, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

In December of 1999, the five-year-old female victim, A.D.,[1] lived with her mother, Kimberly Williams, her younger brother, and the defendant, who was her mother's boyfriend. The defendant often cared for the victim and her brother while their mother worked third shift at a local convenience market. On an evening when the victim's mother was at work, the defendant told the victim to put her mouth "on his private," which she described as "fat" and "soft." At trial, the victim testified that green and yellow "stuff" came out of the defendant's penis. She recalled that she had to get a drink because the substance had a bad taste. The victim also testified that the defendant put

---

[1] It is the policy of this court to withhold the identities of minor victims of sex crimes.

his tongue "on her private" and "lick[ed] it." She remembered that on a different occasion, the defendant directed her to insert a toy bowling pin into his anus. The victim remembered that when the defendant asked her to perform the sex acts, he was watching a videotape which depicted him engaging in similar sexual activities with her mother.

On December 11, 1999, Detective Janice Atkinson of the Chattanooga Police Department was informed by Child Protective Services that the victim had been sexually abused. The detective learned from an interview with the victim that the defendant had touched her vaginal area with his hands and tongue and had placed his penis in her mouth. Medical testing established that the victim had a gonorrhea infection in her mouth.

The defendant admitted to Detective Atkinson that he had fondled the victim in a sexual manner, claiming that the victim had asked if she could perform a sex act on him and he allowed her to touch his "privates." The defendant acknowledged that his penis made contact with the victim's face and the area around her lips. The defendant also admitted that on a second occasion, he asked the victim to use petroleum jelly and to "put her hands on [his] privates." He acknowledged that he ejaculated on the second occasion.

Kimberly Williams, the victim's mother, testified that she began dating the defendant when the victim was approximately six weeks old and moved in with him a short time later. Ms. Williams stated that at the time of the offenses, the defendant was responsible for the care of the victim while she worked third shift at a convenience store. She admitted that she made a pornographic videotape with the defendant. Ms. Williams testified that when she first learned of the victim's allegations of sexual abuse, she assumed that her stepfather, who had touched her in a sexual manner at a young age, was the perpetrator.

Gary Wilbanks, Kimberly Williams' uncle, testified that, during this time period, the defendant had asked him for antibiotics to "get rid of an infection." According to Wilbanks, the defendant explained that he thought he might have an infection because Ms. Williams had been dating other men. Wilbanks testified that he gave the defendant a bottle of Augmentin, which had been given to Wilbanks for the treatment of a sinus infection.

Mary Katherine Spada, a pediatric nurse practitioner, performed a physical examination of the victim as part of her duties at the Children's Advocacy Center. Ms. Spada stated that she interviewed the victim before conducting the physical examination and that the victim related that "she said ou[ch] to Chad but he would not stop, because it hurt. . . . [H]e put his thing down there. . . . [H]e lick it all the way down there and he done it about five or four times." The victim also told Ms. Spada that after being with the defendant she would get a rash that "was a red rash with some white and it burned and scratched too." According to Ms. Spada, the physical examination of the victim was inconclusive for sexual abuse; however, testing established the presence of gonorrhea, a sexually transmitted disease, in the victim's throat. Ms. Spada testified that gonorrhea would cause painful urination and a yellow or green "drainage" from the penis of an infected male. She stated that a gonorrhea infection could be treated by the use of the antibiotic Augmentin.

Dr. Mark Anderson, a witness for the defense, testified that most strains of gonorrhea are resistant to penicillin-based antibiotics, like Augmentin. It was his opinion that it was very unlikely that the defendant could have successfully treated a gonorrhea infection by taking Augmentin.

Delilah Crabtree, the defendant's mother, testified that the victim's maternal grandmother, who reported the abuse, harbored ill will toward the defendant. Ms. Crabtree also testified that the victim and the defendant had a very loving relationship and that the defendant had always treated the victim as his own child. She stated that the victim never expressed fear of the defendant.

The defendant testified that he loved the victim as his own child and adamantly denied any sexual contact with her. He claimed that after learning that the victim's mother had been sexually abused by her stepfather, he became concerned that the victim might also be abused. The defendant also claimed that he confessed only because Detective Atkinson threatened him with violence and denied him the right to consult an attorney. He contended that he told the detective what she wanted to hear so that she would let him go.

**I**

The defendant first asserts that the trial court erred by refusing to require the state to produce the notes taken by Detective Atkinson during her interview with the victim and by preventing access to juvenile court records concerning the victim and her mother. The state argues that disclosure of the information was not required.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that, in a criminal case, the prosecution has a compelling duty to furnish the accused with exculpatory evidence pertaining either to the accused's guilt or innocence or to the potential punishment that may be imposed. Exculpatory evidence under Brady includes information or statements of witnesses which are favorable to the accused. See, e.g., State v. Goodman, 643 S.W.2d 375, 379-80 (Tenn. Crim. App. 1982). Moreover, exculpatory evidence under Brady includes information which can be used only for impeachment purposes. See Giglio v. United States, 405 U.S. 150, 154-55 (1972); Workman v. State, 868 S.W.2d 705, 509 (Tenn. Crim. App. 1993). Failure to reveal exculpatory evidence violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. In order to determine the materiality of undisclosed information, the reviewing court must ascertain whether "in [the] absence [of the information] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419 (1995); see also State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995). Thus, in order to prove a Brady violation, a defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Edgin, 90 S.W.2d at 390.

Before a reviewing court may find a due process violation under Brady, four prerequisites must be satisfied:

(1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
(2) the State must have suppressed the information;
(3) the information must have been favorable to the accused; and
(4) the information must have been material.

Id. The defendant bears the burden of demonstrating the elements of this claim by a preponderance of the evidence. See Smith v. State, 757 S.W.2d 14, 19 (Tenn. Crim. App. 1988). "The Brady rule does not require a prosecutor to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive him of a fair trial." State v. Walker, 910 S.W.2d 381, 389 (Tenn. 1995).

Here, the defendant requested the information and the state refused to provide it. Thus, the first two prerequisites were met. As to the last two criteria, however, the defendant has failed to allege or establish that the documents, which were filed under seal, are either exculpatory or material. After an examination of the content of the documents, it is our conclusion that the information is neither exculpatory nor relevant. Under these circumstances, the state's failure to disclose the documents does not qualify as a violation of Brady v. Maryland.

## II

As his next issue, the defendant contends that the evidence is insufficient to support his conviction on the count alleging that he placed his mouth on the victim's vagina. He specifically asserts that the evidence was insufficient to establish penetration.

On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Rape of a child, a Class A felony, is defined as follows:

Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age.

Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined as:

sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required.

Tenn. Code Ann. § 39-13-501(7) (emphasis added). Cunnilingus, "'a sexual activity involving oral contact with the female genitals,'" does not require that the mouth or tongue actually penetrate into the vagina. State v. Hoyt, 928 S.W.2d 935, 942 (Tenn. Crim. App. 1995) (quoting State v. Karl E. Vanderbilt, No. 70 (Tenn. Crim. App., at Jackson, Apr. 8, 1992)); see also State v. Chesley Randell Thompson, No. 03C01-9807-CC-00238 (Tenn. Crim. App., at Knoxville, March 24, 1999); State v. Bruce Allan Rudd, No. 03C01-9707-CR-00307 (Tenn. Crim. App., at Knoxville, Oct. 6, 1998); State v. Michael Warren Evans, No. 02C01-9306-CC-00124 (Tenn. Crim. App., at Jackson, Mar. 2, 1994). While touching the vagina alone may not constitute penetration, licking does. See State v. Reginald L. Parker, No. 02C01-9306-CR-00130 (Tenn. Crim. App., at Jackson, Dec. 28, 1994).

Here, the five-year-old victim testified that the defendant licked her vagina. In addition to accrediting the testimony of the victim, the jury rejected the claims of the defendant. That was their prerogative. Because a rational trier of fact could have found the essential elements of the crime, the evidence was legally sufficient to support the conviction. See Jackson v. Virginia, 443 U.S. 307 (1979).

## III

The defendant next contends that remarks made by the trial judge during voir dire demonstrated prejudice against him. Because the defendant failed to raise this issue in a motion for new trial, the issue has been waived as a basis for relief on appeal. See Tenn. R. App. P. 3(e). Further, had the issue been properly preserved, the defendant would not prevail on the merits.

"A trial judge should be very careful and not give expression to any thought that would be calculated to lead the jury to infer that his opinion was in favor or against the defendant in a criminal trial." Brooks v. State, 187 Tenn. 67, 213 S.W.2d 7, 10 (1948). If the interjections and comments of a trial judge clearly violate the mandate of impartiality, they may infringe upon a defendant's right to a fair trial. State v. Caughron, 855 S.W.2d 526, 536-537 (Tenn. 1993). "The issue to be determined is not the propriety of the judicial conduct of the trial judge, but whether he committed an error which resulted in an unjust disposition of the case." State v. Baker, 785 S.W.2d 132, 135 (Tenn. Crim. App. 1989).

Here, the defendant complains that the trial court's remark during jury voir dire that the offense of rape of a child was a horrible and terrible offense prejudiced the jury against him and

denied him the right to a fair trial. At the beginning of voir dire, the trial judge made the following remarks:

> Now, you hear this charge and you're thinking to yourselves, how horrible, because it's a horrible offense. I don't think any of us would disagree that this is not a terrible offense. But you can't base your verdict on whether or not this is a horrible offense. You're to base your verdict on whether or not the evidence that will be presented to you in this case, and the law that the court will instruct you, proves to you beyond a reasonable doubt that Mr. Crabtree committed this horrible offense. Because just because he's been charged doesn't mean he's guilty and you cannot draw any inferences from the fact he's been indicted by the grand jury.

When viewed in context of the trial court's entire commentary, it is our view that the comments did not infringe upon the defendant's right to a fair trial. The trial judge merely directed the jury to base its verdict on the evidence and not upon passion or caprice. In consequence, the defendant is not entitled to relief on this issue.

**IV**

As his next issue, the defendant complains that Detective Atkinson improperly bolstered the credibility of the victim when she commented that she did not believe the defendant's initial denial of sexual contact with the victim. Because the defendant failed to make a contemporaneous objection to this evidence and did not present the issue in a motion for new trial, the doctrine of waiver again applies. See Tenn. R. App. P. 3(e), 36(a). Moreover, even if the issue had been properly presented, the defendant would not be entitled to relief.

The record establishes that during cross-examination, defense counsel repeatedly asked Detective Atkinson whether she believed the defendant's initial statement, wherein he denied having sexual contact with the victim. When pressed on why she did not initially believe the defendant, the detective responded that she did not believe the defendant because of his demeanor during the interrogation and because of contradictions with the account of the victim. She further explained that the defendant's body language and his attempts to evade her questions also led her to believe that he lacked candor. On redirect examination, the detective testified that she continued to interrogate the defendant, despite his initial denial, because she "did not feel that Mr. Crabtree was being honest."

While opinion evidence should generally be excluded, see Tenn. R. Evid. 702, defense counsel elicited this testimony during cross-examination. Detective Atkinson's testimony was less an attempt to bolster the victim's statement than it was an attempt to explain the detective's persistence in questioning the defendant after he had initially denied any wrongdoing. No contemporaneous objection was made to the detective's answers to the questions. Generally, appellate relief will not be granted "to a party responsible for an error or who failed to take whatever action was reasonably necessary to prevent or nullify the harmful effect of an error." Tenn. R. App.

P. 36(a); see State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1993). In our view, the defendant is not entitled to relief on this issue.

## V

As his final issue, the defendant contends that his sentence is excessive because the trial court failed to give appropriate weight to two mitigating factors. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the midpoint. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint. Id. A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

In arriving at the defendant's sentence, the trial court applied the following enhancement factors:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
(4) The victim of the offense was particularly vulnerable because of age;
(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;
(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and

(15) The defendant abused a position of private trust.

See Tenn. Code Ann. § 40-35-114(1), (4), (7), (8), and (15) (1997). In mitigation, the trial court applied the following factors:

(1) The defendant's conduct neither caused nor threatened serious bodily injury; and (13) The defendant has strong family support and employable skills; the defendant voluntarily surrendered to authorities; and the defendant participated in discipleship training and anger management counseling while incarcerated.

See Tenn. Code Ann. § 40-35-113(1), (13) ("[a]ny other factor consistent with the purposes of this chapter") (1997). The trial court determined that the enhancement factors greatly outweighed the mitigating factors and imposed the maximum sentence of twenty-five years for each count. The sentences were ordered to be served concurrently.

The defendant contends that the trial court should have found as mitigating factors his potential for rehabilitation and history of mental problems. The trial court, noting the defendant's refusal to accept responsibility and failure to express remorse, determined that the defendant lacked the potential for rehabilitation. It also concluded that the defendant failed to prove that any mental disorder from which he was suffering would have reduced his culpability for the offenses.

At the sentencing hearing, Dr. Keith A. Caruso, a psychiatrist, testified that the defendant was suffering from dysthymic disorder, which Dr. Caruso described as "a chronic form of depression that's manifested b[y] feelings of depression more days than not for a period of greater than two years, accompanied by symptoms like hopelessness, disturbance in appetite, insomnia, problems with concentration and low self-esteem." It was Dr. Caruso's opinion that the disorder, coupled with the fact that the defendant was an "incest offender" rather than a pedophile, made it unlikely that he would commit similar crimes in the future. Dr. Caruso acknowledged that the defendant's mental problems would not have led him to sexually abuse the victim. The defendant read a statement at the sentencing hearing wherein he expressed no remorse, proclaimed his innocence, and remarked that he was not angry with the prosecutor. In our view, the record supports the findings of the trial court.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-8-