IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1998 SESSION

FILED

February 9, 1999

Cecil Crowson, Jr.
Appellate Court Clerk



| | | |
|---|---|---|
| COY D. WILLIAMS, | ) | |
| | ) | C.C.A. No. 03C01-9801-CC-00013 |
| Appellant, | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| STATE OF TENNESSEE, | ) | |
| | ) | (Post-Conviction Relief) |
| Appellee. | ) | |

FOR THE APPELLANT:

Steve Merritt
116 East Harper Avenue
Maryville, TN 37804

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Elizabeth B. Marney
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

Michael L. Flynn
District Attorney General
363 Court Street
Maryville, TN 37804-5906

Edward P. Bailey, Jr.
Assistant District Attorney General
363 Court Street
Maryville, TN 37804-5906

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# O P I N I O N

The appellant, Coy D. Williams, referred herein as "petitioner," appeals as of right from the trial court's dismissal of his petition for post-conviction relief. Petitioner entered guilty pleas in 1992 to murder first degree, aggravated burglary, and theft under $500. Pursuant to a plea agreement, petitioner received a life sentence for the murder conviction and concurrent sentences of ten years and eleven months, twenty-nine days for the burglary and theft convictions. The petitioner filed for post-conviction relief, alleging his guilty pleas were not knowingly and voluntarily made and that he received ineffective assistance of counsel. Following an evidentiary hearing, the trial court denied relief. After a review of the record, we AFFIRM the judgment of the post-conviction court.

## PROCEDURAL BACKGROUND

After the commencement of a jury trial on October 14, 1992, the petitioner elected to plead guilty to murder first degree, aggravated burglary, and theft of property under $500 on October 16, 1992. We glean from the guilty plea proceedings that the petitioner and a co-defendant, Frank Whitmore, broke into the residence of one of Whitmore's relatives and killed the relative. Two days after the murder, the petitioner gave a detailed tape-recorded statement to police officers as to how the offense occurred. The state gave notice to the petitioner that it intended to seek the death penalty. Petitioner's counsel filed a motion to determine whether the state could seek the death penalty, due to the petitioner's mental retardation. At the conclusion of a hearing on October 14, 1992 to determine the merits of the petitioner's motion, the trial court found by, a preponderance of the evidence, the petitioner's functional intelligence quotient was 70 or below and that the petitioner had defects in adaptive behavior. This behavior was manifested by age 18, and existed at the time of the offense. The trial court granted the petitioner's motion to exclude the death penalty, and the state gave indications of an appeal. Subsequently, the petitioner entered his guilty pleas.

The petitioner timely filed a petition for post-conviction relief alleging involuntary guilty pleas, ineffective assistance of counsel, and prosecutorial misconduct. The petitioner filed an amended petition alleging: (1) his mental disease or defect prevented him from meeting the knowing and voluntary requirements for entry of a guilty plea; (2) petitioner's counsel and the prosecutor allowed the petitioner to enter such pleas while

2

aware of his mental condition; (3) counsel and prosecutor failed to request a hearing to determine the petitioner's competence to enter a guilty plea; (4) petitioner's counsel should have filed a motion to suppress petitioner's statement given to the police on several additional grounds that were available; and (5) prosecutorial misconduct in the procurement of the guilty pleas by intimidation.

## POST-CONVICTION HEARING

### A. Guilty Plea

The petitioner, age 35 at the time of the hearing, testified he pled guilty because the state intended to seek the death penalty on him, and he was "scared to death." The petitioner understood pleading guilty to mean an "easy way out" for the court and himself. The petitioner could not recall the specific details the trial judge discussed with him at the guilty plea hearing. The petitioner did not believe he deserved a life sentence and wanted a new trial.

Charles B. Dungan, Jr., licensed attorney since 1965, testified he was appointed to represent the petitioner at the preliminary hearing and continued to do so through the trial stage, until the petitioner entered his guilty pleas. After talking to the petitioner, defense counsel discovered the petitioner could not read or write and was of obvious low intelligence. Thus, counsel began an intensive investigation into the petitioner's mental background. The petitioner was sent to Middle Tennessee Mental Health Institute for an evaluation as to competency and an insanity defense. The petitioner was found competent to stand trial, and an insanity defense was not available.

Based upon the findings of Middle Tennessee Mental Health Institute as to the petitioner's low IQ, due to mental retardation, counsel filed a motion to prevent the state from seeking the death penalty. On October 14, 1992, counsel submitted two experts to the trial court to support his position. In rebuttal, the state offered an expert from Middle Tennessee Mental Health Institute. Prior to this hearing, the experts interviewed the petitioner and found no incompetency.

Counsel believed the trial court's decision to disallow the death penalty could possibly be overturned on appeal. Counsel advised the petitioner that his chances in a trial were zero, and it was in his best interest

to enter a plea of guilty to avoid any chance of the death penalty. The primary focus of the defense was to avoid the death penalty. Counsel testified, based upon various times and various circumstances in the past, the petitioner's responses were appropriate, and he seemed to understand. Counsel was of the opinion that, in the absence of the petitioner's confession, the state could convict him. As a result of their several conversations, counsel believed the petitioner understood he was entering a plea of guilty and that his sentence would be life imprisonment.

Craig L. Garrett, a licensed attorney since 1983, testified he was appointed to represent the petitioner as co-counsel, since the state was seeking the death penalty. Mr. Garrett testified he and Mr. Dungan talked to the petitioner after the competency hearing and explained what had happened. Counsel had further conversations with the petitioner the next day. Mr. Garrett described the case as being very difficult to win, and, if the petitioner pled guilty, the state could not appeal, and in no way could the petitioner receive the death penalty. Mr. Garrett testified the petitioner understood what he was doing at the guilty plea.

Mrs. Shirley Williams, one of the petitioner's sisters, testified her brother is of low intelligence, has difficulty understanding things, and cannot read or write. The petitioner was hit by a car at age 6.

Mrs. Nancy Cinnamon testified she is one of the petitioner' sisters and that her brother has the mind of a 9-year-old. In her opinion, the petitioner did not understand his charges or why he was in court.

In its findings of fact, the post-conviction court held the petitioner understood the nature of the charge, the strength of the proof against him, and the advice of his attorneys. The court found the petitioner made a knowing and voluntary decision to plead guilty.

Findings of the post-conviction court are binding on appeal unless the evidence preponderates otherwise. *Butler v. State,* 789 S.W.2d 898, 899 (Tenn. 1990); *Harries v. State,* 958 S.W.2d 799, 802 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1997). This Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Moreover, questions concerning the credibility of witnesses and weight and value to be given their testimony are for resolution by the post-conviction court. *Black v. State,* 794 S.W.2d 752, 755 (Tenn. Crim. App.), *per. app. denied* (Tenn.

4

1990).

When the accused opts to plead guilty, the plea must be voluntarily, understandingly, and knowingly entered to pass constitutional muster. *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed. 2d 391 (1992); *Brooks v. State,* 187 Tenn. 67, 72, 213 S.W.2d 7, 9 (1948). As our Supreme Court stated in *State ex rel. Barnes v. Henderson,* 220 Tenn. 719, 727, 423 S.W.2d 497, 501 (Tenn. 1968), "It is recognized in this State, as in all jurisdictions, that a plea of guilty must be made voluntarily and with full understanding of its consequences."

If the accused is to make a "voluntary and intelligent choice among the alternative courses of action" available to him, counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices. I *A.B.A. Standards for Criminal Justice* § 4-5.1 commentary (2d ed. 1986). If counsel is convinced that the accused should accept a plea bargain agreement and plead guilty, counsel should recommend that the accused opt for this choice. Counsel may use reasonable persuasion when making the recommendation. *Parham v. State,* 885 S.W.2d 375, 384 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994).

From our review of the record, the petitioner has failed to demonstrate in this appeal that the evidence preponderates against the post-conviction court's findings. *Harries v. State,* 958 S.W.2d at 802; *Clenny v. State,* 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979); *Long v. State,* 510 S.W.2d 83, 86 (Tenn. Crim. App.), *cert. denied* (Tenn. 1974). The guilty plea proceedings reveal the trial court, in view of the petitioner's mental condition, carefully questioned the petitioner as to what he was doing and his understanding of the consequences thereof in compliance with Rule 11, Tenn. R. Crim. P. His trial counsel testified that, after their conversations, the petitioner appeared to understand their advice and made his own decision to plead guilty. We find the evidence in this record supports the post-conviction court's finding that the petitioner's pleas were voluntarily, understandingly, and knowingly entered. There is no merit to this issue.

**B. Ineffective Assistance of Counsel**

5

The petitioner contends that his counsel's decision not to pursue a motion to suppress his confession prior to trial was not a reasonable decision and not within the range of competence demanded by attorneys in criminal cases. The state counters by alleging that the petitioner has failed to carry his burden of proof, and the evidence supports the trial court's conclusion.

As to the facts surrounding his confession, the petitioner testified his attorneys showed him a copy of his statement, but he did not know what a motion to suppress was. The petitioner advised his counsel that he was on drugs, cocaine, at the time of the confession. The petitioner testified that, during his interview, police officers brought his charge partner in the room, laid a pistol on the desk, and told them that if either of them moved or tried to attack each other, the officers would shoot them. The petitioner was afraid because the officers turned the tape-recorder on and off and acted crazy.

Mr. Dungan agreed the petitioner informed him of the details of the police interview and about the pistol, but did not recall if the petitioner told him about being under the influence of cocaine at the time. However, counsel was aware of drug involvement from the petitioner's statement. Counsel filed a motion to suppress the confession, but no hearing was held on the motion.

As to the motion to suppress, co-counsel, Mr. Garrett, testified he could not recall if the motion was heard, but he and Mr. Dungan determined the motion had no merit. Mr. Garrett described his relationship with the petitioner as "very good," and they discussed the petitioner's statement several times. Mr. Garrett found the petitioner's statement to be detailed and contained a good grasp of what was occurring. As to the petitioner being on drugs at the time of the confession, Mr. Garrett testified:

> It just didn't sound that way. And it didn't read that way. And it just – there's nothing to bear that out, is the problem that we had. You know, he was properly Mirandized. You know, the way the statement went, that was what concerned us so much. They had both Defendants together and they would ask one and then the other would chime in and say, well, now, hold on, don't you remember thus and such, and the other one would say, oh, yeah, that's right. And it just had such a ring of, you know, of authenticity to it because of the way it was taken.

In its findings of fact, the post-conviction court found the motion to suppress was timely filed, but trial counsel decided that the facts and law did not support the motion. Thus, counsel's decision was within the

6

range of reasonable competence.

In order for the petitioner to be granted relief on the ground of ineffective assistance of counsel, the petitioner must establish that the advice given or services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). The burden is on the petitioner to show that the evidence preponderates against the findings of the trial court. *Clenny v. State,* 576 S.W.2d 12, 13 (Tenn. Crim. App. 1978), *cert. denied,* 441 U.S. 947 (1979). Otherwise, the findings of fact made by the trial court at the evidentiary hearing are conclusive on appeal. *Black v. State,* 794 S.W.2d 752, 755 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990). Moreover, this Court cannot second-guess trial counsel's tactical and strategic choices, unless those choices are uninformed due to inadequate preparation. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982).

We agree with the post-conviction court finding the decision by trial counsel to forgo the motion to suppress the petitioner's confession was within the range of reasonable competence demanded of attorneys in criminal cases. From a totality of circumstances, defense counsel found the petitioner had been properly Mirandized; the details of the confession indicated the petitioner was not under the influence of any drug; the coercive nature of placing the pistol on the desk was to keep the petitioner and charge partner from attacking one another; and the manner in which each defendant corrected the other indicated the confession was voluntary. There is no merit to this issue.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JAMES CURWOOD WITT, JR., JUDGE